IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-01162-RBJ-CBS

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

    Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation,
THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,

    Defendants.
_____

**PLAINTIFF AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S RESPONSE TO DEFENDANTS' COMBINED MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT**
_____

Plaintiff, American Family Mutual Insurance Company ("American Family"), by and through its attorneys, Lambdin & Chaney, LLP, hereby submits its Response to Defendants' Combined Motion and Brief in Support of Summary Judgment as follows:

## INTRODUCTION

Defendants, St. Paul Fire and Marine Insurance Company and Travelers Indemnity Company (collectively "Defendants"), filed a Motion for Summary Judgment asserting that Defendants owed no duty to defend Plaintiff's and Defendants' mutual insureds under any of the four policies Defendants issued. Defendants assert four distinct arguments, none of which have merit and each of which Plaintiff addresses, in turn, below. Because Defendants are not entitled to summary judgment on the issue of

the duty to defend, summary judgment on the duty to indemnify is also improper, and Defendants have no right to reimbursement of any claimed defense costs.

**RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Denied. Defendants misstate the holding of ***Shaw Construction, LLC v. United Builder Services***, 296 P.3d 145 (Colo. App. 2012), wherein the Court determined that "substantial completion" **for determining when the statute of repose began to run** for the work of **subcontractors** was the date the last CO was issued. *Id.* at 155. The Court specifically declined to address the issue of whether substantial completion of an entire construction project occurs only when the architect certifies the project as complete. Here, the architect certified the project as being complete on June 8, 2004 (*see* **Doc. #19, Ex. 15**); therefore, at a minimum the date of "substantial completion" is an issue of fact.

7. Admitted.

8. Denied as written. Admitted that the Settlement Agreement speaks for itself as to its terms and conditions.

9. Denied as written. Admitted that the Settlement Agreement speaks for itself as to its terms and conditions.

10. Denied as written. Admitted that the Settlement Agreement speaks for itself as to its terms and conditions.

11. Denied as written. Admitted that the Assignment and Assumption of Construction Contract's Warranties and Claims speaks for itself as to its terms and conditions, and also contains the following provisions applicable to Shaw Construction, LLC ("Shaw"):

"Shaw represents, warrants and covenants to Roslyn and SHI as follows:

…(iv) Shaw **continues to maintain all insurance required under the Contract**; …
…and (vii) Shaw will cause its insurers to **add** SHI as an additional insured under all insurance required to be maintained under the Contract."

*See Def.* ***Ex. I***, pp. 3-5 (emphasis added).

12. Denied as written. Admitted that the Assignment of Lease and Intangibles speaks for itself as to its terms and conditions.

13. Denied as written. The underlying complaint alleged: "Some time after the elected directors assumed control and after the property had been put to its intended use, property damage resultant from certain construction defects slowly became apparent at particular locations in the community." *See **Def. Ex. A***, ¶ 16. Plaintiff further states that the underlying complaint does not allege when the property damage ***actually occurred***.

14. Denied. *Def. **Ex. K*** is an unsworn document that is not admissible for purposes of summary judgment. Plaintiff admits the underlying complaint alleges RCS turned over control to the homeowners in July 2005. *See Def. **Ex. A***, ¶ 15.

15. Denied. *Def. **Ex. L*** is an unsworn document that is not admissible for purposes of summary judgment.

16. Admitted.

17. Admitted that Defendants agreed to partially fund the defense of Roslyn Court at Stapleton, LLC ("RCS"), and issued reservation of rights letters (*Def. **Ex. M***), which speak for themselves. Defendants have not, however, cited any policy provision which would give them a basis to claim reimbursement.

18. Denied –misstates Plaintiff's Complaint. Admitted St. Paul claims it paid $58,516.86 in defense costs.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Denied. *Def. **Ex. S*** is an unsworn document that is not admissible for purposes of summary judgment, and misstates the date of "substantial completion." See **Doc. #19, Ex. 15**.

## **LEGAL STANDARDS**

**1. Principles of Policy Interpretation:**

Under Colorado law, "an insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." **Compass Ins. Co. v. City of Littleton**, 984 P.2d 606, 613 (Colo. 1999). The rules of construction include:

> Words used in an insurance policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. Courts should not rewrite insurance policy provisions that are clear and unambiguous. However, when a contractual provision is reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured.

The Court must strive to give effect to the intent and reasonable expectations of the parties to the contract (the insurer and the insured). **Thompson v. Maryland Cas. Co.**, 84 P.3d 496, 501 (Colo. 2004). In this regard, the Court first determines whether the contract is ambiguous, *i.e.*, susceptible to more than one meaning. **Ballow v. PHICO Ins. Co.**, 875 P.2d 1354, 1359 (Colo. 1993). If it is ambiguous, then the Court must determine what the parties to the contract intended. Whenever possible, such intent is discerned from the policy itself. **Bengtson v. USAA Prop. & Cas. Ins.**, 3 P.3d 1233, 1235 (Colo. App. 2000). However, the Court may resort to extrinsic evidence to determine what the

parties to the contract intended. ***Cyprus Amax Minerals Co. v. Lexington Ins. Co***, 74 P.3d 294, 301-02 (Colo. 2003).

If the contract is not ambiguous, the Court enforces it according to its plain language. ***Mapes v. City Council of City of Walsenburg***, 151 P.3d 574 (Colo. App. 2006). The Court gives each word in the contract a plain and ordinary meaning unless the contract evidences otherwise. ***Cyprus***, 74 P.3d at 299. The Court reads the contract as a whole and does not read its provisions in isolation. ***Id.*** The Court also liberally construes an insurance contract to provide for the broadest possible coverage. See ***Fire Ins. Exch. v. Bentley***, 953 P.2d 1297, 1300 (Colo. App. 1998).

**2. Response to Defendants' Duty to Defend Analysis:**

An insurer seeking to avoid its duty to defend bears a heavy burden. ***Hecla Mining Co. v. New Hampshire Ins. Co.,*** 811 P.2d 1083, 1089 (Colo. 1991). An insurer's duty to defend arises when the underlying complaint against the insurer alleges ***any*** facts that ***might*** fall within the coverage of the policy. ***Id.*** (Emphasis added.) The duty to defend arises from the allegations of the complaint, *i.e.*, if "the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." ***Id.***

In order to relax the standard applicable to determining its Motion, Defendants assert the circumstances of this case entitle them to rely on facts outside of the complaint to determine their duty to defend. An insurer who defends under a reservation of rights,

can seek reimbursement ***should the facts at trial*** prove that the incident resulting in liability was not covered by the policy, ***or*** file a declaratory judgment action ***after the underlying case has been adjudicated***." ***Cotter Corp. v. American Empire Surplus Lines Ins. Co.***, 90 P.3d 814, 827 (Colo. 2004) (emphasis added), *citing* ***Hecla Mining Co.***, 811 P.2d at 1089. "Adjudication" implies a hearing by a court, after notice, of legal evidence on the factual issue(s) involved. *Black's Law Dictionary, Sixth Ed.*

Thus, ***Cotter*** contemplates an insurer who defends under a reservation may rely on facts outside of the four corners of a complaint when there has been a trial or adjudication with requisite establishment of evidentiary facts. It does not stand for the proposition that an insurer may initially undertake a defense, and having done that, immediately or whenever it pleases go outside the four corners of the complaint to look for extrinsic facts to avoid defense. In this case, the case was settled with no trial or adjudication of facts. Accordingly, Defendants remain limited to the "complaint rule."

**3. Response to Defendants' Duty to Indemnify Analysis:**

Defendants' position on the duty to indemnify appears to simply be: Where no duty to defend exists, if follows that there can be no duty to indemnify. Plaintiff agrees this is a correct statement of law; however, since Defendants did owe a duty to defend, as shown below, it would be improper to determine a duty to indemnify on a summary judgment motion. Whether coverage is ultimately available under the contract is a question of fact to be decided by the trier of fact. ***Hecla Mining Co.***, 811 P.2d at 1089. A resolution of the

duty to indemnify is premature where there is a duty to defend but the liability of the insured has not yet been determined. **Compass Ins. Co.**, 984 P.2d at 621.

## ARGUMENT

**1. Defendants owed a duty to defend TP and Peterson:**

Defendants assert they owed no defense to either TP Development, LLC ("TP) or Jacqueline Peterson, because their respective additional insured ("AI") endorsements provided they were to insure any person or organization Shaw was required by written contract to include as an AI, and that the contract between Shaw and RCS, which required Shaw to name RCS as "Owner," did not specifically identify TP or Peterson as persons or entities to be designated as AI.

Regarding TP, Defendants' argument is a red herring since TP is ***not a separately named defendant*** in the underlying complaint. *See Def.* **Ex. A**. The Complaint named Roslyn Court at Stapleton, LLC d/b/a T.P. Development, LLC a/k/a Roslyn Court Development, LLC. *Def.* **Ex. A**, ¶ 5. Since the Complaint identifies TP as a "d/b/a" of RCS, the Complaint treats RCS and TP as one and the same. Accordingly, the issue of whether TP was owed a defense is irrelevant since TP was not named as a separate defendant – it was merely referred to as a "d/b/a" of RCS.

Regarding Ms. Peterson, she was a separately named defendant in the underlying lawsuit. However, the underlying complaint alleges she served in the same role as RCS – namely, as alleged "declarant, developer and builder-vendor of Roslyn Court." *Def.* **Ex. A**, ¶¶ 5-6. Ms. Peterson signed the contract with Shaw on behalf of RCS. *See* **Def. Ex. D**. It

is clear that Peterson's alleged liability was co-extensive with the alleged liability of RCS. In *United Nat. Ins. Co. v. 200 North Dearborn Partnership*, 979 N.E.2d 920 (Ill. App. 2012), an insurer made the same argument Defendants make here – that "non-identified defendants" (in that case, partners of the named partnership) were not additional insureds under its policy. *Id.* at 928. The Illinois Court of Appeals rejected this argument, since "a partner's liability was co-extensive with the partnership itself." *Id.* The same reasoning applies here, and Peterson should be considered an insured just as RCS is.

**2. St. Paul Policy No. 1 affords coverage to RCS because the allegations of the Complaint alleged property damage that may have occurred to property of others during the policy period:**

Defendants next argue that "St. Paul Policy No. 1" (July 15, 2003 through July 15, 2004) provides no coverage because no damage occurred to "property of others" (that is, property not wholly owned by RCS) during the policy period. In making this argument, Defendants confuse **control** of the unit owners' **association** with **ownership** of unit owners' **property**.

The underlying Complaint alleged the Plaintiff "Association" was incorporated as a Colorado non-profit corporation and as a homeowners association under the Colorado Common Interest Ownership Act, §§ 38-33.3-101 to 139, C.R.S. *Def. Ex. A*, ¶ 1. The underlying Complaint alleged RCS and Peterson were declarants and developers of the condominium project. *Def. Ex. A*, ¶¶ 5-6. The underlying Complaint alleged: "Defendants incorporated and controlled Association until July, 2005 at which time they transitioned control to a board of directors elected by the homeowners." *Def. Ex. A*, ¶ 15. Nowhere

does the underlying Complaint identify any period when the subject property was wholly owned by RCS.

Under the Colorado Common Interest Ownership Act ("CCIOA"), a common interest community may be created by recording a declaration and conveying the real estate subject to that declaration to the association. C.R.S. § 38-33.3-201(1). The common interest ownership consists of an individual air space unit of a multi-unit property together with an undivided interest in common elements. C.R.S. § 38-33.3-102. For condominiums, the declaration must allocate to each unit a fraction or percentage of undivided interests in the common elements. C.R.S. § 38-33.3-207(a). A unit owners' association must be organized no later than the first unit in the common interest community is conveyed to a purchaser. C.R.S. § 38-33.3-301.

> Under CCIOA:
>
> The declaration… may provide for a period of declarant control of the association, during which period a declarant, or persons designated by the declarant, may appoint and remove officers of the executive board. Regardless of the period of declarant control provided in the declaration, **a period of declarant control terminates no later than the earlier of sixty days after conveyance of seventy-five percent of the units that may be created to unit owners other than the declarant**, two years after the last conveyance of a unit by the declarant in the ordinary course of business, or two years after any right to add new units was last exercised.

C.R.S. § 38-33.3-303(h)(a)(1) (emphasis added). Accordingly, declarant control as referenced in the underlying Complaint encompasses a period of time in which the developer/declarant is selling units to third-party purchasers, and control is turned over to homeowners when at least 75% of units are conveyed to unit owners ***other than the***

***declarant***.  Accordingly, the underlying complaint alleges that, as of July 2005, at least 75% of the units – and 75% of unit owners' undivided interests in common elements – was owned "by others," *not* RCS.

For Defendants to prevail on this argument, they would have to show that *no* units at Roslyn Court were sold by RCS to third-party unit owners before July 15, 2004, even though Defendants allege the project was completed and all Certificates of Occupancy issued by March 10, 2004.  The underlying Complaint is silent on this issue, so under the "complaint rule," Defendants owed a defense.  Further, even if the Court were to consider extrinsic evidence as Defendants suggest, they have provided no evidence to show the entire project – including every unit at the project – was ***wholly owned*** by RCS during the entirety of the policy period.  For this reason, summary judgment must be denied.

Regarding "St. Paul Policy No. 1," Defendants also argue the policy terms provide "we'll consider all physical damage…to happen at the time that it is first manifested."  *See Def. **Ex. O***, p. 39.  The policy deems "First manifested" to mean "first known, or first in a condition where it reasonably should have been known…"  *Def. **Ex. O***, p. 39.  Here, the underlying Complaint alleges that sometime after the elected directors assumed control of the association and the property had been put to its intended use, "property damage from certain construction defects slowly became apparent…" *Def. **Ex. A***, ¶ 16.  The underlying complaint does *not* allege when the property damage ***should have*** become apparent, ***or when the property damage actually occurred***, and for that reason alone the underlying Complaint triggers a duty to defend.

Defendants are, in effect, improperly asking this Court assume that **all** alleged damage occurred after its policy periods – even though the underlying Complaint does not speak at all to when the damage actually occurred. Such an assumption is unfounded because, under the "complaint rule," any doubts and disputes regarding such property damage's cause or timing must be resolved in the insured's favor. The Court should note that the policy, by its terms, covers "physical damage" that "happens while this agreement is in effect." *Def.* **Ex. O**, pp. 7 and 39. Thus, the policy by its terms covers **physical damage that occurs during the policy period**, regardless of when the policy terms "deem" the damage to have occurred.

Courts addressing the issue have found a duty to defend despite the presence of such "deemer" provisions, that is, insurance provisions that purport to "deem" when property damage occurs and to limit any continuation of damage to said date. *See* **McClain v. Nat'l Fire & Marine Ins. Co.**, 2008 WL 5501105, at *4 n.2 & *5 n.5 D. Nev. June 23, 2008) (insurer owed duty to defend despite presence of M-5076); **Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.**, 230 S.W.3d 895, 902 (Tex. App.– Houston [14th Dist.] 2007, no pet.) (while no coverage may exist for property damage that first occurred before policy's effective date, coverage was not excluded for property damage that occurs during the policy period where it is caused by a process that began before the policy period; policy exclusion is not based on beginning of process leading to the ultimate damage but on beginning of actual damage); **Boss Mgmt. Servs. Inc. v. Acceptance Ins. Co.**, No. H-06-2397, 2007 WL 2752700, at *12 (S.D. Tex. Sept. 19,

2007) (where none of the complaints alleged precise timing of claimed property damage, court was unable to determine, as a matter of law, that the property damage occurred at some time outside the policies' coverage period).

In short, insurers cannot use a "deemer" provision to arbitrarily determine when property damage actually occurred. Summary judgment on "St. Paul Policy No. 1" should be denied.

**3. St. Paul Policy No. 2's Blanket Additional Insured Endorsement Does Not Exclude the Project from Coverage:**

Defendants next argue that "St. Paul Policy No. 2" excludes the Roslyn Court project from coverage because the AI endorsement states it "applies to projects other than those listed on the coverage summary," and the coverage summary lists the Roslyn Court project. However, a close reading of the AI endorsement in conjunction with the coverage summary indicates that Defendants' interpretation is not reasonable and leads to absurd results.

The AI endorsement for this policy states, on the first page, that it applies to: "Any person or organization you are required in a written contract to show as an additional protected person." *See Def.* **Ex. P**, p. 40. The second page of the AI endorsement states: "Applies to projects other than those listed on the coverage summary." *Def.* **Ex. P**, p. 41.

The coverage summary (Form 47174) states that it "shows the limits of coverage that apply to your Commercial General Liability Protection." *Def.* **Ex. P**, p. 7. The coverage summary also states: "It also lists those endorsements, if any, that must have

- 13 -

certain information shown for them to apply." *Def. **Ex. P***, p. 7. The form goes on to state:

> **Important Note:** Only endorsements that must have certain information shown for them to apply are named in this table. The required information follows the name of each such endorsement. …

The coverage summary refers to three endorsements – ***none of which are the AI endorsement***. The first endorsement listed on the coverage summary is Form G0217, which contains a deductibles table. See ***Ex. 1*** to this Response. Form G0217 refers to the coverage summary (Form 47174), which states that a $25,000 deductible applies to "Projects other than those listed below," while a $100,000 deductible applies to "Projects specifically listed below." *Def. **Ex. P***, p. 7. The coverage summary goes on to list 21 projects, one of which is Roslyn Court. *Def. **Ex. P***, p. 8.

The second and third endorsements listed on the coverage summary are Forms 43382 (Described Work Exclusion) and 47158 (Describe Products or Completed Work Exclusion). See ***Ex. 2*** and ***Ex. 3***, attached to this Response. Both of these endorsements state: "We won't cover [injury or damage resulting from] work described in the Coverage Summary." Turning again to the coverage summary, it lists both endorsements (Forms 43382 and 47158), and for each describes the work to which the endorsement applies, and states it applies to work on any project "not a Named Project listed below." *Def. **Ex. P***, p. 8. The coverage summary goes on to list: "Named Projects which are not subject to the Described Work and Described Products or Completed Work Exclusions," and lists 21 projects, including (again) Roslyn Court. *Def. **Ex. P***, p. 8.

The pattern of the coverage summary is clear. It identifies a specific endorsement, and then lists specific projects to which the endorsement does not apply. Accordingly, when the AI endorsement states, "applies to projects other than those listed on the coverage summary," it reasonably follows that the coverage summary would: (a) **specifically** identify the AI endorsement (Form G0322); and **then** (b) list the projects to which the AI endorsement would not apply. **That** would be consistent with how the coverage summary treats **other** endorsements – Form G0322 is not mentioned at all, however, in the coverage summary. *Def.* **Ex. P**, pp. 40-41. As such, the coverage summary does not list **any** projects to which Form G0322 does not apply.

Defendants' interpretation defies any reasonable interpretation and leads to absurd results. Under Defendants' interpretation, **any** project listed on the coverage summary is excluded from AI coverage – even if the reason the project was listed is in reference to a **completely** different endorsement. Such a reading is nonsensical and contrary to how the coverage summary excludes projects only for endorsements **specifically identified** in the coverage summary. Since the coverage summary neither specifically identifies Form G0322, nor lists any projects to which G0322 does not apply, Defendants' argument has no merit and summary judgment should be denied.

**4. Shaw was required by contract to include RCS as an AI, so the Travelers' policies were triggered:**

Regarding the two Travelers' policies, Defendants make a single argument to apply to both policies. Defendants argue that, due to an assignment of the contract by RCS, "since Shaw was no longer required by written contract to procure liability

insurance including RCS as an additional insured as of April 29, 2005, one of the prerequisites to additional insured coverage for RCS under the Travelers Policies failed to exist." Defendants' argument fails to appreciate the fact that the assignment specifically required that Shaw "continues to maintain all insurance required under the Contract" [between RCS and Shaw] – and thus the assignment *maintained* the requirement that Shaw continue to provide AI coverage to RCS. *See Def.* **Ex. H**, p. 56.

The Addendum to Construction Agreement between RCS ("Owner") and Shaw ("Contractor") provides:

> Notwithstanding any provision in the Contract to the contrary, **at all times during construction, and for a period of two years after Substantial Completion, the Contractor shall obtain and maintain in full force an effect… the following valid and enforceable policies issued by insurance companies… naming the Owner**, Forest City, and the City and County of Denver **as additional insureds**.

*See Def.* **Ex. G**, p. 3, ¶ 13 (emphasis added). The listed policies to be maintained included commercial general liability with completed operations coverage. *Def.* **Ex. G**, p. 4. By the terms of the Addendum to Construction Agreement, "Owner" is specifically defined as RCS.

On April 29, 2005, RCS executed an Assignment and Assumption of Construction Contract's Warranties and Claims ("Assignment") to Stapleton Housing Initiatives, LLC ("SHI"). *See* **Def. Ex. I**. RCS did assign and transfer to SHI all of RCS's right, title and interest as "Owner" in, to and under all Contract warranties, claims and remedies the "Owner" has or may have arising from or relating to Shaw's performance of its obligations under the Contract. *Def.* **Ex. I**.

However, the Assignment is also executed by Shaw, and provides that "Shaw represents, warrants and covenants to Roslyn and SHI as follows:

> …(iv)  Shaw **continues to maintain all insurance required under the Contract**; …
> …and (vii)  Shaw will cause its insurers to **add** SHI as an additional insured under all insurance required to be maintained under the Contract."

*Def. **Ex. I***, pp. 3-5 (emphasis added).  Accordingly, the Assignment contemplates that Shaw will (a) continue to maintain all insurance required by the contract, including insurance for RCS; and (b) add SHI as an additional insured under the insurance required to be maintained.  If Defendants' interpretation of the intent of the assignment was correct, the inclusion of the foregoing provisions would be unnecessary and superfluous.  If, as Defendants claim, the effect of the assignment was to automatically revoke any obligation by Shaw to provide AI coverage to RCS, and to ***substitute*** that obligation for SHI, the assignment would not have required Shaw to ***continue to maintain insurance required by contract***, and to ***add*** – not substitute – SHI as an AI.

The foregoing provisions do not support Defendants' argument, but rather plainly demonstrate the intent of the parties to have Shaw ***both***: (1) continue to provide AI coverage to RCS and other entities named in the original contract; ***and*** (2) add SHI to its AI coverage.  Accordingly, a contractual obligation to provide RCS with AI coverage remained "in effect" at the time of the Travelers' policies.[1]

---

[1] In Footnote 6 to their Motion, Defendants claim that the second Travelers policy (June 1, 2006 through June 1, 2007) provided no coverage in any event because Shaw was only required to maintain AI coverage until 2 years after substantial completion, or March 10, 2006. However, there is at minimum an issue of fact as to when "substantial completion" occurred for purposes of insurance coverage. Plaintiff asserts that substantial completion occurred when the project architect certified the entire project was

Defendants' reliance on ***Liberty Ins. Corp. v. Ferguson Steel Co., Inc.***, 812 N.E.2d 228 (2004), is misplaced. That case involved a question of coverage for a personal injury accident that occurred **before** the contract requiring AI coverage was executed. *Id.* at 229-230. In that case, it was clear that a contract executed after the accident was not "in effect at the time of the claimed loss of injury." *Id.* at 231. By contrast, in this case, Defendants argue that the parties intended by assignment to nullify an existing contractual duty otherwise "in effect" during the relevant policy periods. As discussed above, the relevant contractual language does not evidence such intent, and therefore summary judgment must be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants had a duty to defend RCS and Peterson under each of their four respective policies, and consequently any duty to indemnify would be an issue of fact not susceptible of determination by summary judgment.

WHEREFORE, for the foregoing reasons, Defendants' Combined Motion and Brief in Support of Summary Judgment should be DENIED.

DATED this 26th day of September, 2014.

---

complete. *See* Plaintiff's **Response to Defendants' Statement of Undisputed Facts** above, Nos. 6 and 25.

Respectfully submitted,

LAMBDIN & CHANEY, LLP

By: *John W. Fairless*
    L. Kathleen Chaney, Esq.
    John W. Fairless, Esq.
    Jerad A. West, Esq.
    4949 S. Syracuse Street, Suite 600
    Denver, Colorado 80237
    Telephone:   (303) 799-8889
    Facsimile:    (303) 799-3700
    Email:        kchaney@lclaw.net

*Attorneys for American Family Mutual Insurance Company*

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2014, I electronically filed the foregoing **PLAINTIFF AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S RESPONSE TO DEFENDANTS' COMBINED MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Nancy L. Pearl, Esq.
Laura Trask Schneider, Esq.
Pearl Schneider, LLC
999 18th Street, South Tower, Suite 1850
Denver, CO 80202

/s/ *John W. Fairless*
John W. Fairless