IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01162-RBJ

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

    Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation,
THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,

    Defendants.

ORDER

This matter comes before the Court on the parties' cross motions for summary judgment. The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Neither party requests oral argument.[1]  For the following reasons, plaintiff's motion is denied, and defendants' motion is granted in part and denied in part.

**BACKGROUND**

This case arises from the development of an affordable housing condominium in the Stapleton area of Denver called Roslyn Court (the "Project").  Roslyn Court at Stapleton, LLC ("RCS") was the developer.  RCS contracted with Shaw Construction, LLC to be the general contractor.  The construction took place in 2003 and 2004.

In April 2005 RCS defaulted on a promissory note and loan agreement with the City and County of Denver.  The default led to a settlement agreement whereunder RCS conveyed all of

---

[1] American Family's counsel did request oral argument in is reply brief but later withdrew that request.

its interest in the Project and its rights under its contract with Shaw Construction to Stapleton Housing Initiatives, LLC.

In July 2005 the Roslyn Court Homeowners Association was turned over to the homeowners. Sometime thereafter the HOA observed property damage resulting from construction defects. On May 15, 2007 the HOA gave notice of a claim. On January 21, 2009 the HOA filed a construction defect lawsuit in the Denver District Court against (1) Roslyn Court at Stapleton, LLC d/b/a T.P. Development, LLC a/k/a Roslyn Court Development; (2) Jacqueline G. Peterson; and (3) Shaw Construction. T.P. Development is the managing member of RCS. Ms. Peterson is the manager of T.P. Development.

RCS's liability insurer, American Family Mutual Insurance Company, and Shaw Construction's liability insurers, St. Paul Fire & Marine Insurance Company and the Travelers Indemnity Company, apparently agreed to share the costs of defending RCS in the underlying case, although the details of the agreement and what was paid are not clear and might to be disputed to some degree. Eventually the underlying case was resolved through settlement. St. Paul and/or Travelers paid $1,000,000 to settle all claims against Shaw Construction.[2] American Family paid $820,000 to settle all remaining claims against RCS, Ms. Peterson, and T.P. Development, LLC.

In the present case American Family contends that St. Paul and Travelers are wholly liable for RCS's defense and settlement costs arising from the underlying lawsuit. It claims that pursuant to the construction agreement, Shaw Construction purchased liability policies that covered RCS as an additional insured; that this was the primary coverage for RCS; and that the

---

[2] Defendants suggest that this settlement exhausted its policy limits vis-à-vis RCS. But Shaw Construction's obligation was to provide primary coverage for property damage in the amount of $2 million per occurrence. If the St. Paul policies were construed as not providing this amount of primary coverage – an issue that the Court does not reach or decide in this Order – then it appears that excess or umbrella coverage under the St. Paul policies would drop down to fill this gap.

available policy limits under the those policies are sufficient fully to reimburse American Family for the amounts it paid on behalf of RCS. American Family's motion for partial summary judgment seeks an order that the defendants had the primary duty to defend RCS, and that American Family's policies were excess to defendants' policies. ECF No. 19.

St. Paul and Travelers contend that they had no obligation to insure RCS, T.P. Development, or Ms. Peterson. They seek summary judgment to that effect and judgment on a counterclaim for reimbursement of the amount they contributed to RCS's defense in the underlying case. ECF No. 20.

## STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

## ANALYSIS

Upon review of the parties' respective motions the Court finds that there is at least one material fact that is genuinely disputed: when did property damage to property other than RCS's own property, i.e., damage to the property of the homeowners represented by the HOA, occur? For example, it appears to the Court that whether damaged units were sold to some third parties during at least one of the St. Paul policy periods is disputed.[3] Even if no homeowner who suffered property damage purchased his or her home during the St. Paul periods, the parties have

---

[3] The fact that RCS might have retained an interest in common elements during the St. Paul policy periods does not mean that third parties, if any, who shared an interest in those elements did not suffer property damage. I also note that St. Paul's briefs repeatedly cite C.R.S. § 38-33-102, but defendants do not explain how this statute applies to this Project. *See* C.R.S. § 38-33.3-115.

not briefed the possible application of *Hoang v. Assurance Co. of America*, 149 P.3d 798, 803 (Colo. 2007) to this case.  The dispute regarding when property damage occurred is a sufficient ground to deny the pending motions, with one exception.  The exception is that the Court holds that the Travelers policies provide no coverage for RCS.

To assist the parties the Court will also address several other issues raised in the briefs.  Please note, however, that this is not an invitation to file another round of summary judgment motions.  If the parties do not settle the case, the case will be tried; and each side may file a trial brief of no more than 10 pages.

### 1. **The Travelers Policies.**

RCS and Shaw Construction entered into a construction contract using a standard form entitled "Standard Form of Agreement Between Owner and Contractor."  The "Owner" was identified as RCS.  ECF No. 19-2 at 1.  Shaw Construction's duty to provide additional insured coverage to the Owner was contained in an addendum.  *Id.* at 15–16.

But RCS ceased to be the owner of the Project in April 2005 when, pursuant to its default and settlement, it conveyed all of its interest in the Project and its rights under its contract with Shaw Construction to Stapleton Housing Initiatives, LLC.  From that point forward Stapleton was the owner.

American Family seems to suggest that because RCS was identified as the "Owner," Shaw Construction had a continuing obligation after April 2005 to purchase new policies to insure RCS, even though it was no longer the owner of the Project.  This is a "gotcha" type argument that is entirely unpersuasive to this Court.  The obvious substance was that the general contractor would provide additional insured coverage to the actual owner of the Project, and once RCS was no longer in that role, Shaw Construction's duty to it ended.  Because the

Travelers policies covered the period July 15, 2005 to June 1, 2007, they provided no coverage to RCS, T.P. Development, or Ms. Peterson. This conclusion also appears to moot the parties' dispute about whether the date of substantial completion of the Project was in March or July of 2004.

### 2. **T.P. Development, LLC and Jacqueline Peterson.**

St. Paul argues that its policies did not cover T.P. Development or Ms. Peterson because they weren't identified as the "Owner" in the construction contract. In the circumstances, this too strikes me as a hyper-technical argument that is unpersuasive.

The policies that Shaw Construction purchased from St. Paul did not identify the additional insured by name. Rather, and not uncommonly, the policies provided by endorsement that any person or organization that Shaw Construction was required by a written contract to show as an additional protected person would be covered by the policy. *See, e.g.*, ECF No. 20-16 at 40.

It is undisputed that T.P. Development, LLC is the managing member of RCS, and that Ms. Peterson is the manager for T.P. Development. Ms. Peterson signed the contract with Shaw Construction on behalf of RCS. Although the handwriting is difficult to read, it appears to indicate that Ms. Peterson signed as the manager and sole member of T.P. Development as the managing member of RCS. ECF No. 19-2 at 11. The underlying complaint named Roslyn Court at Stapleton, LLC d/b/a T.P. Development, LLC a/k/a Roslyn Court Development, LLC. ECF No. 19-1. Although the underlying complaint purported to sue Ms. Peterson "individually," the substance of the complaint was that the HOA was suing RCS through whatever name or individual it was acting.

Defendants acknowledge that the construction contract included certain "General Conditions of the Contract for Construction." ECF No. 20 at 3, ¶ 3. That document is found at ECF No. 20-5 in the Court's electronic filing system. Section 2.1.1 provides,

> The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Subparagraph 4.2.3, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

The Court construes the term "Owner" in the construction contract to mean RCS (when it was the owner) and its authorized representatives on the Project, specifically, RCS's managing member, T.P. Development and T.P. Development's manager, Ms. Peterson.

### 3. **First Manifestation Endorsement.**

Defendants argue that neither of the St. Paul policies provides coverage because of an endorsement entitled "Limitation of Coverage to First Manifested Property Damage Endorsement" attached to both policies. ECF No. 20-15 at 39 (the policy in effect for the period 7/15/03-04 policy) and ECF No. 20-16 at 42 (the policy in effect for the period 7/15/04-05). The endorsement leaves intact the policies' promise to pay amounts that the protected person is required to pay for covered property damage that "happens while this agreement is in effect." However, it goes on to state, "We'll consider all physical damage to tangible property of others to happen at the time it is first manifested." *Id.* The term "first manifested" for purposes of coverage of protected persons other than Shaw Construction is defined to mean "first known, or first in a condition where it reasonably should have been known by that other protected person (RCS) or by you (Shaw)." *Id.*

St. Paul argues that the HOA alleged in the underlying case that the property damage became apparent after the HOA took control in July 2005. But this misses the point of the endorsement. The question is whether the property damage was known or reasonably should have been known by RCS or by Shaw.

A number of things can be said about this endorsement and its application. First, when property damage to property of others was or should have been known to RCS or to Shaw Construction is not an undisputed fact. Second, at most this endorsement applies to tangible property damage, not loss of use. But third, the Court questions the enforceability of the first manifestation clause in this endorsement.

The basic policy states in plain English that the policy covers property damage that "happens while this agreement is in effect." The St. Paul policies were in effect between July 15, 2003 and July 15, 2005. But the endorsement deems the word "happens" to mean when the contractor or the developer knew or should have known of the damage, thus nullifying the coverage unless RCS or Shaw knew or should have known during the policy period that it was occurring. This raises a number of possible issues that the parties have not addressed. American Family's Response suggests that "deemer" clauses of this nature might not be enforceable, but the cited cases are either inaccessible to the Court (*McClain v. Nat's Fire & Marine Ins. Co.,* No. 2:05-CV-706, 2008 WL 5501105, at *4 (D. Nev. June 23, 2008)) or not on point (*Williams Consol. I, Ltd v. TIG Ins. Co.,* 230 S.W.3d 895, 902 (Tex. App. – Houston 2007) and *Boss Mgmt. Servs. Inc. v. Acceptance Ins. Co.,* No. H-06-2397, 2007 WL 22752700, at *12 (S.D. Tex. Sept. 19, 2007)). ECF No. 21 at 12-13. St. Paul provides no case law in its reply. ECF No. 25 at 6–7. This is an issue that the parties should address if the case goes to trial.

**4. "Coverage Summary" exclusion.**

The defendants contend that the second St. Paul policy (7/15/04–7/15/05) does not protect RCS because the AI Endorsement excludes the Project from coverage. As with the first St. Paul policy, the second policy provides additional insured protection for "[a]ny person or organization you are required in a written contract to show as an additional protected person." ECF No. 20-16 at 40. However, the second policy adds another sentence on a separate page of the endorsement: "Applies to projects other than those listed on the coverage summary." *Id.* at 41. The defendants contend that the Project is listed in the coverage summary and is therefore excluded from coverage under the second St. Paul policy. I disagree.

The Coverage Summary is a standard printed form that details the general limits of coverage. *Id.* at 7. The form includes an endorsement table which lists endorsements that must have certain information shown for them to apply. The first such endorsement is the "Contractors Commercial General Liability Deductible Endorsement – Deductibles Apply to Damages and Claim Expenses (G0217)." As to that endorsement a $100,000 Bodily Injury, Property Damage and Expense deductible per event is said to apply to a list of projects, one of which is Roslyn Court. *Id.* at 7–8.

The endorsement table lists two other endorsements: a "Described Work Exclusion Endorsement" and a "Described Products or Completed Work Exclusion Endorsement." These endorsements exclude work on single-family or multi-family housing and residential condominium projects. These endorsements are followed by a list of projects that are not subject to them, one of which is Roslyn Court. *Id.* at 8.

In short, the two lists put a $100,000 deductible per event on the Project and except the Project from two exclusions that otherwise apply to residential condominium projects. The

8

suggestion that those lists were intended to exclude the Project from the additional insured coverage is unpersuasive. That construction would negate Shaw Construction's obligation to provide insurance coverage for RCS. But St. Paul was obviously aware of that obligation, which is the whole reason that the "Additional Protected Persons Endorsement" was added to the policy. It makes no sense to add the AI endorsement to the policy and then include a provision in the same endorsement that negates it. Moreover, what sense does it make to construe the sentence as negating coverage for work on a residential condominium project when two endorsements that would have excluded such coverage were stated to be inapplicable to Roslyn Court in the Coverage Summary?

What the draftsman of the final sentence of the Additional Protected Persons Endorsement had in mind is not clear. What is clear to this Court is that it does not mean that the second St. Paul policy provides no additional insured coverage for RCS. That would be inconsistent with the policy as a whole, the obvious intent of the parties, and the express purposes that the lists in the Coverage Summary were intended to accomplish.

### 5. **Duty to Defend.**

The parties apparently shared RCS's defense costs. Both sides now seek reimbursement of whatever they paid.

I begin with American Family's argument that defendants cannot obtain reimbursement of the defense costs they paid because they rely on facts outside of the underlying complaint to determine their duty to defend. American Family suggests that defendants could have relied on evidentiary facts if they had been established in the underlying lawsuit, but because that case was settled without a trial, no such facts were developed, leaving the defendants without the opportunity to seek reimbursement. I disagree with this argument.

It is well settled in Colorado that "a duty to defend exists when a complaint includes any allegations that, 'if sustained would impose a liability covered by the policy.'" *Cotter Corp. v. American Empire Surplus Lines Insurance Co.*, 90 P.3d 814, 827 (Colo. 2004). If an insurer believes that it can ultimately show that it had no obligation to defend, the appropriate course of action "is to provide a defense to the insured under a reservation of rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated." *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

While the quoted language refers to the facts at trial, I do not construe *Cotter* as being limited to cases that go through a trial. In *Cotter* the Court contrasted two scenarios. If an insurer refuses to defend, and the insured sues to recover defense costs after the underlying litigation has been resolved, courts "apply the general rule that the duty to defend is determined from the factual allegations contained in the complaint." 90 P.3d at 828.

> Determining the duty to defend from the face of the complaint in this circumstance serves two purposes: first, it ensures that insurers that refuse to defend do not gain an advantage over insurers that determine their obligations before the underlying litigation concludes and, second, it protects an insured's reasonable expectation of a defense.

*Id.*

On the other hand, when an insurer provides a defense while believing it has no obligation to defend, it may later "seek reimbursement for defense costs if coverage ultimately did not exist under their policies." *Id. Cotter* states,

> We attempted to balance the interests of both the insurers and the insureds by ensuring that the broad rule basing the duty to defend on the complaint will not require insurers to pay defense costs if coverage ultimately does not exist under the policies. Additionally, we created an incentive for insurers to defend by allowing them to subsequently seek reimbursement. Thus, we did not modify the general determination of the duty to defend, but instead merely attempted to

10

create a remedy for insurers that provided defenses to insureds when coverage ultimately did not exist.

*Id.* (internal citations omitted).

This reasoning turns on an insurer's response to its duty to defend, not on whether the underlying case goes to trial. Surely it makes no sense to tell an insurer who honors its duty to defend that it must force the case to trial (thereby increasing the defense costs and the risk to its insured) if it wishes fully to develop its reserved position that there was no coverage. Whether the insurer is entitled to reimbursement of defense costs paid turns on whether there was coverage under the policy, however that might be determined.

Here, the Court has concluded that it cannot finally resolve the disputed coverage issues under the St. Paul and American Family policies on motions for summary judgment. However, assuming that the defendants did step up to the plate and pay an agreed share of RCS's defense costs, if it is ultimately established that defendants had no duty to indemnify RCS, then it follows that defendants will be reimbursed for what they paid. The same reasoning applies equally to American Family.

**ORDER**

1. Plaintiff's motion for partial summary judgment [ECF No. 19] is DENIED.

2. Defendants' motion for summary judgment [ECF No. 20] is GRANTED IN PART AND DENIED IN PART.

3. The parties are directed to contact Chambers within 14 days to set the case for trial.

DATED this 6th day of March, 2015.

BY THE COURT:

_____

R. Brooke Jackson  
United States District Judge